UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEVADA DEANZA FAMILY LIMITED PARTNERSHIP,<br><br>Plaintiff, and<br><br>FIRST ELEMENT FUEL, INC.,<br><br>Plaintiff-in-Intervention,<br><br>v.<br><br>TESORO REFINING & MARKETING LLC, MARATHON PETROLEUM CORPORATION and MARATHON PETROLEUM COMPANY LP.,<br><br>Defendants. | Case No. 5:19-cv-03773-NC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE COMPLAINT-IN-INTERVENTION; GRANTING LEAVE TO AMEND**<br><br>Re: Dkt. No. 60. |

Plaintiff Nevada DeAnza Family Limited Partnership brings this case against Defendants Tesoro Refining & Marketing Company and Marathon Petroleum Corporation for rescission of contract and fraud arising out of a gas station franchising agreement. Intervening Plaintiff FirstElement Fuel, who leased portions of the gas station from NDF, intervened in the lawsuit. Before the Court is Defendants' motion to dismiss FirstElement's complaint-in-intervention for lack of jurisdiction due to the presence of a political question under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). The Court concludes that no political question is present, but that FirstElement fails to state a claim under Rule 12(b)(6) as to all of its causes of action. Accordingly, the Court GRANTS Defendants' motion to dismiss and GRANTS FirstElement leave to amend the complaint-in-intervention.

## I. Background

### A. Factual Allegations

The following facts are alleged in the complaint-in-intervention. Dkt. No. 54. The Court takes these allegations as true for the purposes of deciding this Order. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

Plaintiff Nevada DeAnza Family Limited Partnership ("NDF") owns a fueling station in Sunnyvale, California. *See* Dkt. No. 54 ¶ 3. In July 2016, NDF agreed to lease part of the Sunnyvale Station to Plaintiff-Intervenor FirstElement to install hydrogen fuel dispensers; their agreement is known as the Site Lease. *Id.* ¶¶ 3, 7. The site plan for the Sunnyvale Station showed that the hydrogen dispensers were to be located under its canopy because that was the only possible location for hydrogen dispensers at the station. *Id.* ¶¶ 6, 7, 31, 36. Since 2016, FirstElement and NDF have expended tremendous time and money to install hydrogen dispensers at the Sunnyvale Station. *Id.* ¶ 7, 42–51.

Also in 2016, NDF began negotiating an exclusive petroleum supply and branding contract with Defendant Tesoro Refining & Marketing Company. *Id.* ¶ 5, 32. Before agreeing to brand the Sunnyvale Station, NDF informed Tesoro that it intended to install a hydrogen dispenser under the canopy. *Id.* ¶ 6, 35–41. Tesoro did not object or otherwise indicate that the location of the hydrogen dispenser was an issue. *Id.* In December, Tesoro and NDF signed the Retail Service Agreement (RSA) for rebranding the Sunnyvale Station as a "Mobil" station. *Id.* ¶ 8, 32, 53. Following the rebranding, NDF informed Tesoro and Tesoro's successor, Defendant Marathon Petroleum Corporation, about its hydrogen dispenser plans and received no objection. *Id.*

In 2019, Marathon notified NDF for the first time that NDF would not be allowed to install hydrogen dispensers under the canopy. *Id.* ¶ 9, 68. The following year, Tesoro terminated the RSA and stated that the reason for the termination was the construction of the hydrogen dispensers. *Id.* ¶ 11, 73. Dkt. No. 54, Ex. 3. As a result, the NDF lost its supply of petroleum and lost its branding contract. *See* Dkt. No. 54 ¶ 11. FirstElement lost $130,019 from missing the California Energy Commission Grant's opening deadline

2

1  for the hydrogen dispensers and $607,500 in missed credit generation. *Id.* ¶¶ 84, 85.

## B. Procedural Background

NDF filed its complaint against Defendants for rescission of contract, fraud, and violation of California's Unfair Competition Law. *See* Dkt. No. 1. FirstElement subsequently moved to intervene in the case. *See* Dkt. No. 44. After the court granted the motion, FirstElement filed a complaint in intervention against Defendants for: (1) interference of contractual relationship, (2) violation of California's Unfair Competition Law, and (3) declaratory judgment. *See* Dkt. No. 54.

All parties consented to the jurisdiction of a magistrate judge under 28 U.S.C.A. § 636(c). *See* Dkt. Nos. 5, 12, 46.

## II. Legal Standard

### A. Federal Rule of Civil Procedure 12(b)(1)

Dismissal under Federal Rule of Civil Procedure 12(b)(1) is appropriate when the complaint fails to establish the court's subject matter jurisdiction over the action. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). The court has a "responsibility to decide[] cases properly before it, even those it would gladly avoid." *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 195 (2012). However, the "presence of a political question deprives a court of subject matter jurisdiction." *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 980 (9th Cir. 2007). This "narrow" exception, known as the political question doctrine, "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Zivotofsky*, 566 U.S. at 195; *Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230 (1986).

### B. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Cahill*, 80 F.3d at 337–38. The Court, however,

United States District Court
Northern District of California

1    need not accept as true "allegations that are merely conclusory, unwarranted deductions of
2    fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.,* 536 F.3d 1049, 1055 (9th
3    Cir. 2008). A complaint need not give detailed factual allegations but must contain
4    sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its
5    face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible
6    when it "allows the court to draw the reasonable inference that the defendant is liable for
7    the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a court grants a
8    motion to dismiss, the plaintiff should be given leave to amend unless the pleading could
9    not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127
10   (9th Cir. 2000).

**III.   Discussion**

   **A. Statutory Interpretation of PMPA § 2807**

Whether hydrogen fuel is considered a renewable fuel under the Petroleum Marketing Practices Act (PMPA), 15 U.S.C.A. § 2807, is a central question to the motion before the Court. Plaintiff-in-intervention FirstElement contends that hydrogen should be protected by the PMPA, which would mean that its installation of hydrogen dispensers at NDF's gas station does not violate any agreement with the defendants. Defendants, on the other hand, argue that their contract rescission was legitimate because hydrogen is not a renewable fuel under the PMPA. The Court addresses this issue before turning to the parties' arguments on the motion to dismiss.

Courts generally interpret a statute by the "ordinary public meaning of its terms at the time of its enactment," because "only the words on the page constitute the law adopted by Congress and approved by the President." *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1738 (2020). In interpreting a statute, courts may look to the statute's design, object, and policy—but if the statute's language is "clear and unambiguous," then that is the end of the matter. *Crandon v. United States*, 494 U.S. 152, 158 (1990); *United States v. Chhun*, 744 F.3d 1110, 1116 (9th Cir. 2014) (quoting *United States v. Bahe*, 201 F.3d 1124, 1128 (9th Cir. 2000)). Indeed, statutory interpretation should not deviate from or add to the ordinary

4

meaning of statutory terms "inspired only by extratextual sources and . . . imaginations" because doing so risks "amending statutes outside the legislative process." *Bostock*, 140 S. Ct. at 1738.

The PMPA prohibits franchise agreements from restricting the installation of renewable fuel pumps. It states that "[n]o franchise-related document . . . shall contain any provision allowing a franchisor to restrict the franchisee or any affiliate from installing on the marketing premises of the franchisee a renewable fuel pump or tank." *See* Dkt. No. 60 at 12; 15 U.S.C.A. § 2807(b)(1)(A). The PMPA also prohibits the restriction of converting, advertising, and selling renewable fuel. *Id*. The PMPA includes a definition for what constitutes a "renewable fuel." 15 U.S.C.A. § 2807(a)(1). To constitute a renewable fuel for the purposes of § 2807, a fuel needs to be either: "(A) at least 85 percent of the volume of which consists of ethanol; or (B) any mixture of biodiesel and diesel or renewable diesel determined without regard to any use of kerosene and containing at least 20 percent biodiesel or renewable diesel." *Id*. The parties agree that hydrogen fuel does not satisfy either statutory definition. *See* Dkt. No. 54 ¶¶ 102–05.

Here, the meaning of "renewable fuel" under the PMPA is unambiguous: the statute provides two clear definitions for what it protects. No language in the statute suggests that it is intended to include fuel types other than those covered by its two definitions. Hydrogen is neither 85% ethanol, nor is it a mixture of biodiesel and diesel or renewable diesel containing at least 20% biodiesel or renewable diesel. The statute's language leaves no room for expansion of those definitions.

FirstElement argues that the Court should interpret § 2807 to include hydrogen as a renewable fuel. They point out that the PMPA was passed in 2007, but that hydrogen fuel was not used in commercially-produced automobiles until 2013. Compl. ¶ 102. They suggest that because hydrogen fuel has since been endorsed and encouraged at both the state and federal levels, it should be included within § 2807's scope. *Id*. ¶ 106. In 2005, for example, a subchapter on hydrogen was enacted under the National Energy Policy and Programs codified in Chapter 149 of the United States Code. *Id*. ¶ 103.

5

The Court is not persuaded by FirstElement that principles of statutory interpretation direct a finding that hydrogen fuel is included in § 2807. FirstElement admits that the language of the statute does not describe hydrogen fuel as a protected renewable fuel. Outside its language, FirstElement fails to point to any history, policy, or design of the PMPA to show that it should include hydrogen fuel. Instead, FirstElement describes contemporary policies of both the California state and federal governments that generally encourage hydrogen fuel usage. This is not enough to establish that the PMPA in particular should be interpreted to include it.

Instead, the language of the statute controls. Because the meaning of renewable fuel under § 2807 is plainly defined and no ambiguity is present, the Court's job is done. *Bostock*, 140 S. Ct. at 1749. Accordingly, the Court finds that hydrogen fuel is not considered a renewable fuel by PMPA § 2807.

**B. FirstElement's Claims Do Not Present A Non-Justiciable Political Question.**

In *Baker v. Carr*, the Supreme Court established six factors that implicate a political question:

> (1) a textually demonstrable constitutional commitment of the issue to a coordinate political department; (2) a lack of judicially discoverable and manageable standards for resolving it; (3) the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; (4) the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; (5) an unusual need for unquestioning adherence to a political decision already made; or (6) the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

369 U.S. 186, 217 (1962). "The Supreme Court recently has placed more weight on the first two factors," but "dismissal is appropriate if 'one of these six formulations is inextricable from the case at bar.'" *Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 822 (9th Cir. 2017) (citing *Baker*, 369 U.S. at 217).

Here, the political question issue centers on the interpretation of "renewable fuel" in PMPA § 2807. Defendants contend that FirstElement's claims—for intentional interference with contractual relations, violation of California's Unfair Competition Law,

6

and declaratory relief—present a political question because they argue that these claims ask the Court to go beyond the PMPA to include hydrogen as a renewable fuel. Dkt. No. 60 at 12. Therefore, Defendants argue, the Court lacks jurisdiction over the complaint-in-intervention. "[T]he political question doctrine requires analysis on a claim-by-claim basis." *Mattis*, 868 F.3d at 815. Accordingly, the court discusses each claim in turn.

### 1. FirstElement's Request for Declaratory Relief is not Barred by the *Baker* Factors

Defendants contend that FirstElement's declaratory relief claim presents a political question under the first *Baker* factor because the claim essentially requests that the Court amend an existing law, which is a power assigned only to the legislative branch. Dkt. No. 60 at 9. However, the Court finds that FirstElement's claim does not require that the Court supplant Congress's judgment by adding to the PMPA's definition of renewable fuel. Instead, the Court need only determine whether the PMPA's intent was to include hydrogen once the fuel became commercially available for vehicles. As such, the Court is simply "engag[ing] in the 'familiar judicial exercise' of reading and applying a statute, conscious of the purpose expressed by Congress." *Mattis*, 868 F.3d at 812 (citing *Zivotofsky*, 566 U.S. at 196). For the second and third *Baker* factors, the Court need not evaluate the country's broad energy and environmental policy, as Defendants suggest, in order to decide Congress's intention. The determination can be made based on the plain language of the PMPA, which gives the statute's intent. Factor four does not apply here either because the Court need not supplant Congress's definition of "renewable fuel." Rather, the Court must merely apply Congress's definition to hydrogen. Defendants concede that the fifth factor is not applicable to this situation. Finally, because the Court is not adding to Congress's definition, there exists no risk of inconsistent pronouncements between the legislative and judicial branch, making the sixth *Baker* factor also inapplicable.

Because the Court finds that the complaint-in-intervention does not present a political question, the motion to dismiss on this basis is hereby DENIED.

7

### 2. The Intentional Interference with Contractual Relationship Claim Does Not Depend on the Court's Interpretation of the PMPA

In its intervening complaint, FirstElement alleges that Tesoro's agents intentionally misled NDF into believing that Tesoro approved the installation of the hydrogen station under the canopy.  This false representation allegedly amounted to interference when Tesoro elected to prohibit installation of hydrogen fuel stations and hindered the Site Lease agreement between NDF and FirstElement.  Because FirstElement claims that Tesoro *intentionally* interfered, the correct interpretation of the PMPA matters little to this cause of action.  Regardless of whether the Court finds that the PMPA encompasses hydrogen as a "renewable fuel," Tesoro's conduct remains the same.

### 3. The Unfair Competition Law Claim is not Barred by the *Baker* Factors

Similar to the intentional interference claim, FirstElement's UCL claim is mainly premised on Tesoro's misrepresentation to NDF that was allegedly designed to induce NDF to agree to the RSA.  FirstElement alleges that Tesoro's refusal to allow a hydrogen fuel station violates § 2907 of the PMPA.  However, as explained above, this argument requires the court to merely "engage in the familiar judicial exercise of reading and applying a statute, conscious of the purpose expressed by Congress." *Mattis*, 868 F.3d at 812.  Thus, none of the *Baker* factors apply to FirstElement's UCL claim.

## C. Failure to State Claims

### 1. The Complaint Fails to State Sufficient Factual Matter to Show that Defendants Intentionally Interfered with Contractual Relationships

The tort of intentional interference with contract requires allegations of the following elements: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *CRST Van Expedited, Inc. v. Werner Enter., Inc.*, 479 F.3d 1099, 1105 (9th Cir. 2007).  Here, the complaint satisfies the first two elements of the claim by alleging that the Site Lease is a valid contract between NDF and FirstElement and that NDF informed Mr. Wilson, a Tesoro franchise recruiter, about

8

1  the Site Lease. It also satisfies the fourth and fifth elements: FirstElement alleges that the
2  defendants terminated their contract, costing them over $730,000 in damages. However,
3  FirstElement fails to allege facts that establish Tesoro's intent to disrupt the contract
4  pursuant to element three. To satisfy the intent requirement, FirstElement can either allege
5  facts that show: (1) Tesoro's specific purpose was to disrupt the Site Lease or (2) Tesoro
6  knew that interference of the Site Lease was a necessary consequence of their action or
7  substantially certain to occur. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.
8  4th 1134, 1153 (2003); *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 56
9  (1998).

10  The complaint-in-intervention fails to satisfy the first method of showing intent.
11  Allegedly, Tesoro conducted three acts that interfered with the Site Lease: falsely
12  representing its position on the dispensers, asking for further details on the dispenser which
13  resulted in months of unnecessary discussion, and terminating the RSA. *See* Dkt. No. 54
14  ¶¶ 78-86. These acts on their face are not indicative of an intent or desire to interfere with
15  another party's contract. FirstElement argues that Tesoro's false representation proves
16  Tesoro's intent to disrupt the Site Lease, because Tesoro's representative Mr. Wilson
17  "knew that Tesoro would not have approved a Hydrogen Dispenser under the canopy," and
18  "in the interest of expanding the Mobil brand into Northern California, he failed to disclose
19  this material fact to NDF." Dkt. No. 54 ¶ 38. However, this at best suggests that Tesoro
20  intended to mislead NDF in order to close a deal. Moreover, the obstruction of the
21  dispenser and termination of the RSA do not plausibly show that Tesoro specifically
22  wanted to interfere with FirstElement's contractual relationship because there are
23  alternative business explanations for terminating the RSA. *See Iqbal*, 556 U.S. at 682. In
24  fact, it is fairly unreasonable to assume that Tesoro would ruin a business relationship with
25  NDF primarily to interfere with the Site Lease, when there is no apparent benefit to Tesoro
26  for doing so.

27  FirstElement's allegations are better furnished to prove intent through the second
28  method. But even then, the intervening complaint does not allege sufficient facts to show

9

that Tesoro knew with substantial certainty that its actions would interfere with the Site Lease. First, Tesoro's false representation about the hydrogen dispenser would not have interfered with the Site Lease with substantial certainty. NDF is reasonably expected to read the RSA and learn of its restrictions before signing the contract. *See Upton v. Tribilcock*, 91 U.S. 45, 50 (1875) ("[i]t will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained"). In reading the RSA, NDF would have discovered that the agreement expressly prohibited the NDF from operating any "[a]ncillary Businesses . . . unless agreed in writing," and NDF could have then refused to sign the agreement. Dkt. No. 54 Ex. 2 §§ 5(a), 6(c). *See also* Dkt. No. 54 Ex. 3. Additionally, the complaint never alleges that Tesoro knew the specific terms and conditions of the Site Lease, such as the requirement that the station remain branded and operational. Therefore, Tesoro would not have known with certainty that asking for further details on the dispenser or terminating the RSA would cause undue delay to the performance of the Site Lease.

While FirstElement alleges how Tesoro interfered with the Site Lease, it fails to allege that the interference was intentional. Thus, FirstElement fails to adequately allege element three of the tortious interference with contract claim. The motion to dismiss this claim is hereby GRANTED. Because FirstElement could cure these deficiencies by alleging additional facts, the Courts grants LEAVE TO AMEND the claim.

### 2. The Complaint Fails to State a Claim for Appropriate Relief under California's Unfair Competition Law

To state a claim to relief, a pleading must include a demand for relief sought. Fed. R. Civ. P. 8(a)(3). Thus, to survive a 12(b)(6) motion to dismiss, a complaint must plausibly request relief that the Court could grant for each claim. *See Iqbal*, 556 U.S. at 678. Because the UCL is equitable in nature, a plaintiff alleging a violation of the UCL may obtain only restitution and/or injunctive relief. *Stearns v. Select Comfort Retail Corp.*, Case No. 08-cv-02746 JF, 2009 WL 1635931, at *17 (N.D. Cal. June 5, 2009).

Here, the complaint seeks only one form of equitable relief for its UCL claim: an

10

1  injunction requiring Tesoro and Marathon to accept that hydrogen fuel is within the
2  PMPA's definition of renewable fuel. *See* Dkt. No. 54 at 22. As previously discussed, the
3  Court finds that PMPA's definition of renewable fuel does not encompass hydrogen fuel
4  and thus the PMPA's "prohibition on restriction of installation of renewable fuel pumps"
5  does not apply to hydrogen dispensers. 15 U.S.C.A. § 2807. Accordingly, the Court may
6  not grant the injunction sought because Tesoro would not violate FirstElement or NDF's
7  statutory rights by refusing to allow NDF install hydrogen fuel dispensers. *See U.S. v. W.*
8  *T. Grant Co.*, 345 U.S. 629, 633, (1953) ("The purpose of an injunction is to prevent future
9  violations"). As a result, the complaint fails to state a claim for violation of the UCL
10 because it fails to plausibly allege relief sought. The motion to dismiss this claim is hereby
11 GRANTED. Because First Element could seek alternative equitable remedies under the
12 UCL, the Court grants LEAVE TO AMEND the claim.

### 3. The Complaint Fails to State a Valid Declaratory Relief Claim

The Declaratory Judgment Act allows courts to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C.A. § 2201. Courts have discretion over whether to grant declaratory judgment and should deny relief "when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *U.S. v. State of Wash.*, 759 F.2d 1353, 1357 (9th Cir. 1985).

FirstElement requests that the Court declare that hydrogen fuel constitutes a renewable fuel under PMPA § 2807 and that Tesoro's refusal to allow hydrogen dispensers to be installed at NDF's Sunnyvale Station runs afoul of PMPA § 2807. However, as discussed above, PMPA § 2807's definition of renewable fuel does not encompass hydrogen fuel. As such, FirstElement has not established that it is entitled to this relief, because PMPA § 2807 does not protect FirstElement's hydrogen dispensers from Tesoro's restrictions. The motion to dismiss this claim is GRANTED. No further allegation of facts could cure this claim, so the Court does not grant leave to amend it. *Lopez*, 203 F.3d at 1127.

## IV. Conclusion

The complaint-in-intervention fails to allege sufficient facts to plausibly plead its claims for intentional interference with contractual relations and violation of California's Unfair Competition Law. The motion to dismiss those claims is therefore GRANTED. Because FirstElement could theoretically cure the deficiencies identified in this Order, the Court GRANTS LEAVE TO AMEND those claims.

The motion to dismiss the claim for declaratory relief is also GRANTED. Because the Court has determined in this Order that it may not provide the relief sought—that is, by making a finding that "hydrogen fuel" falls under the PMPA's list of protected renewable fuels—the Court does not grant leave to amend this claim.

FirstElement may file an amended complaint by **August 10, 2020.** FirstElement may not add any new claims or parties without leave of Court. The defendants must answer or file a responsive pleading within fourteen days of being served the amended complaint.

**IT IS SO ORDERED.**

Dated: July 27, 2020

_____
NATHANAEL M. COUSINS
United States Magistrate Judge